IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JILL WEZOREK,<br>    Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ALLSTATE INSURANCE COMPANY,<br>    Defendant | : | NO. 06-CV-1031 |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER BAROSH,<br>    Counterclaim Defendant | : | |

## MEMORANDUM AND ORDER

**TIMOTHY R. RICE**                                                                             June 22, 2007
**U.S. MAGISTRATE JUDGE**

      This case requires an examination of the rarely invoked residual hearsay exception found in Federal Rule of Evidence 807. Because defendant has met its heavy burden, see United States v. Washington, 106 F.3d 983, 1001-02 (D.C. Cir. 1997), I find Roman Torres' statement is admissible.

      Jill Wezorek brought this breach of contract action alleging Allstate Insurance Company ("Allstate") breached an insurance contract and acted in bad faith, in violation of 42 Pa. Cons. Stat. Ann. § 8371. Allstate filed a counterclaim against Wezorek and Christopher Barosh, whom Allstate joined as a counterclaim defendant, alleging Wezorek and Barosh committed civil insurance fraud, in violation of 18 Pa. Cons. Stat. Ann. § 4117.

      Allstate filed a motion in limine (Doc. No. 21) to introduce evidence of the recorded statement of Roman Torres, which Wezorek opposes. On June 21, 2007, oral argument was held on the matter. After considering the parties' filings and the arguments made at the hearing, as set forth below, I will admit Torres' statement under the residual hearsay exception, Federal Rule of

Evidence 807.[1]

I. <u>Facts</u>[2]

On September 9, 2005, Wezorek, with the assistance of Barosh, applied for homeowners insurance from Allstate for the property at 1148 South 54th Street, Philadelphia, Pennsylvania. Wezorek and Barosh obtained the policy through Torres, an Allstate representative. On September 16, 2005, Allstate notified Wezorek the policy would be cancelled effective October 27, 2005.[3] Two days before the policy was to be cancelled, the property was damaged by fire, which was deemed incendiary by the Philadelphia Fire Department. The next day Barosh reported the fire to Allstate, which then conducted an investigation. Upon completion of the investigation, Allstate informed Wezorek the homeowners policy was voided as of September 10, 2005, and said it would not be liable for any claims. Allstate then refunded all premium payments.

II. <u>Discussion</u>

Allstate alleges Wezorek and Barosh will testify about statements Torres made to them

---

[1] Allstate's motion also sought to use Torres' statement as impeachment material under Fed. R. Evid. 806. Allstate conceded at oral argument that Rule 806 was inapplicable. Allstate admitted the use of the statement would improperly impeach Wezorek and Barosh, not Torres, the hearsay declarant. <u>See</u> Fed. R. Evid. 806; <u>United States v. Graham</u>, 858 F.2d 986, 989-90 (5th Cir. 1988) (Rule 806 does not permit the admission of a hearsay declarant's denial of making certain statements even though a reporting witness testified that the hearsay declarant made such statements because admission of the denial does not seek to impeach the declarant, but instead seeks to impeach the reporting witness by contesting whether such statements were made).

[2] These facts are taken from the parties' joint pre-trial stipulation.

[3] The parties have not stipulated why Allstate cancelled the policy. Allstate asserts the policy was initially cancelled because the property was too old for the type of homeowners insurance policy issued.

during the insurance policy application process.[4] After learning during discovery that Wezorek and Barosh would attempt to admit Torres' statements at trial, Allstate unsuccessfully attempted to locate Torres, who no longer worked for Allstate. As a result, Allstate seeks to offer Torres' November 9, 2005 recorded statement to its claims adjustor discussing Wezorek's application process. Allstate correctly contends the statement is admissible under the residual hearsay exception, Fed. R. Evid. 807.

### A. Residual exception

An out-of-court statement offered for the truth of the matter asserted is inadmissible unless it falls into one of the enumerated hearsay exceptions found in Federal Rules of Evidence 803 & 804, is considered non-hearsay by Rule 801(d), or satisfies the residual hearsay exception in Rule 807. See Fed. R. Evid. 801 & 802. The residual hearsay exception is invoked rarely in exceptional circumstances. Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 112 (3d Cir. 2001); United States v. Mitchell, 145 F.3d 572, 578 (3d Cir. 1998). "The proponent of the statement bears a heavy burden. . . ," United States v. Washington, 106 F.3d 983, 1001-02 (D.C. Cir. 1997), and its invocation demands "some degree of rigor," Trustees of the University of Pennsylvania v. Lexington Ins. Co., 815 F.2d 890, 906 (3d Cir. 1987) (citations omitted).

Rule 807 provides:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than

---

[4] In their response to the motion, Wezorek and Barosh admitted they would seek to introduce statements - - including Torres' statement - - made during the application process. At oral argument, counsel said they would also testify about correspondence Wezorek and Barosh sent to Torres to alert him to mistakes on the application.

-3-

any other evidence; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Thus, the statement must be trustworthy, material, probative, in the interests of justice, consistent with the purposes of the Rules of Evidence, and accompanied by proper notice. See, e.g. Coyle v. Kristjan Palusalu Maritime Co., Ltd., 83 F. Supp. 2d 535, 545 (E.D. Pa. 2000) (Robreno, J.). "[H]igh degrees of probativeness and necessity" are required. United States v. Bailey, 581 F.2d 341, 347 (3d Cir. 1978).

Factors relevant to trustworthiness include: (1) whether the statement was made under oath; (2) whether the statement was voluntarily made; (3) whether the statement was based on personal knowledge; (4) whether the declarant made a prior inconsistent statement; (5) whether the statement was videotaped; (6) whether the declarant was subject to cross examination; (7) the proximity of time between the events described and the statement; (8) whether the statement is corroborated; (9) the declarant's motivation to fabricate; (10) whether the statement is prepared in anticipation of litigation; (11) the spontaneity of the statement; and (12) whether the declarant's memory was faulty. Greco v. Nat'l R.R. Passenger Corp., No. 02-6862, 2005 WL 1320147, at *5 (E.D. Pa. June 1, 2005) (Surrick, J.).

1. Trustworthiness

Allstate asserts Torres' statement is trustworthy because of the following: (1) it was taped, allowing the court to assess the credibility of the statement by listening to Torres' voice; (2) it was made two months after the application process in question; (3) Torres had personal knowledge of the events recounted in the statement; (4) it was not prepared in anticipation of

litigation; (5) it is consistent with documents in Torres' file; and (6) Torres said his answers were true and correct. I agree.

Torres' statement contains guarantees of trustworthiness similar to the affidavit in Bohler-Uddeholm, 247 F.3d at 111-113, where the Court upheld the district court's admission, under Rule 807, of the affidavit of Uddeholm's former president, which recounted what had transpired at board of directors meetings. The district court found the affidavit trustworthy because: (1) the declarant was known; (2) the statement was made under oath; (3) the declarant knew of the pending litigation and that the statement could later be subject to cross examination; (4) the statement was based on personal observation; (5) the declarant was no longer employed by the company and did not have a financial interest in the litigation; (6) the minutes of the meeting partially corroborated the affidavit; and (7) the declarant was qualified to make the assertions. Id. at 113.

Torres' statement differs in three respects: (1) Torres was not under oath; (2) the litigation was not pending at the time of the statement, so Torres did not know his statements would have been subject to cross examination at a later date; and (3) Torres was still employed by Allstate at the time he made the statement. These three differences, however, do not preclude admissibility. Although Torres' statement was unsworn, at the end of his statement he pledged that all of his answers were true and correct. Moreover, Allstate was conducting a claim investigation. It is undisputed Torres knew of the investigation because his statement is a recorded interview with the claims adjustor. Had Allstate discovered Torres had made misrepresentations in his statement, consequences were surely to follow. With the possibility of being contradicted by

Wezorek and Barosh, Torres had an incentive to speak truthfully to the claims adjustor.[5]

Torres' status as a continuing employee for Allstate does not cast a shadow on the trustworthiness of his statement. Torres' statement shows his willingness to admit when he made a mistake on the insurance application. See Torres' Statement at 26 (Torres admitted mistakenly inputting that Wezorek was the original owner of the home). After admitting the mistake, Torres did not attempt to explain it away as if he felt his job was in jeopardy. Instead, Torres and the adjustor continued discussing Torres' interaction with Wezorek and Barosh. Moreover, when the adjustor skeptically asked whether Torres had spoken directly to Wezorek, the insurance applicant, Torres conceded that he had not. Had Torres felt pressure to conceal his lack of diligence, he certainly would not have admitted that he did not speak to the insurance applicant, as required by Allstate policy.

In all other important regards, Torres' statement is similar to the statement in Bohler-Uddeholm. It is undisputed the declarant is known. Wezorek and Barosh can attest to Torres' firsthand knowledge of the interactions described in the statement because the interactions were among the three. Torres' statement is within his personal expertise because it concerned only his interactions with Wezorek and Barosh during the application process, something he was employed to undertake. Moreover, Torres' statement is partially corroborated by the insurance application. Although the application did not record each statement made during the interactions, it constitutes a contemporaneous recording of Torres' understanding of the facts underlying Wezorek's and Barosh's attempt to obtain an insurance policy. Torres' statement was made only two months after the application was completed, and thus, the interaction was still

---

[5] Allstate represented at oral argument that such contradictions were absent from Wezorek's and Barosh's depositions, and were revealed only after Allstate disclosed Torres would be unavailable for trial.

fresh in his mind when he made the statement.

Torres' statement is unlike the statement at issue in <u>United States v. Wright</u>, 363 F.3d 237, 245-46 (3d Cir. 2004), where the court properly excluded under Rule 807 an out-of-court statement made to the declarant's attorney because it was not under oath, was self-serving, and was made at a time when the declarant knew he was under investigation. These facts led the district court to find the declarant had a reason to fabricate when speaking with his attorney. <u>Id.</u> Here, Torres' statement was not self-serving. Torres admitted one mistake and readily admitted he had not spoken to the insurance applicant, Wezorek (other than to secure a credit card number). Torres also was not under investigation at the time he made the statement. Instead, he was aiding an Allstate claims adjustor investigating Wezorek's insurance claim. Moreover, Torres was not speaking to a superior at Allstate, he was aiding a co-worker. At oral argument Allstate proffered evidence that Torres was not disciplined or reprimanded for his conduct, the adjustor did not have the authority to discipline Torres, and any deficiencies in Torres' application procedures would have resulted only in additional training. Thus, Torres did not have a motive to fabricate, and his admission of a mistake demonstrates his candor.

For the foregoing reasons I find Torres' statement contains equivalent guarantees of trustworthiness as required in Rule 807.

### 2. <u>Materiality</u>

There is no question Torres' statement is material to the litigation. At oral argument Wezorek's and Barosh's counsel conceded the statement is material. Moreover, the representations made to Torres, which led to the insurance application, are directly at issue where Wezorek claims Allstate breached the terms of the contract and Allstate claims Wezorek and Barosh made factual misrepresentations and committed insurance fraud. <u>See Bohler-Uddeholm</u>,

247 F.3d at 113 (affidavit rebutting opposing party's version of events was material).

### 3. Probativeness

Torres' statement is more probative than any other evidence Allstate could obtain through reasonable efforts. Wezorek and Barosh intend to introduce evidence concerning what information was exchanged with Torres during the application process. Allstate seeks to rebut Wezorek's and Barosh's claims. Due to Torres' unavailability, Allstate cannot call Torres to testify at trial. Torres, Wezorek, and Barosh are the only witnesses privy to the interactions. Although Allstate can cross-examine Wezorek and Barosh, including impeaching each on their post-deposition discoveries of correspondence made during the application process with now-unavailable Torres, Allstate's best available evidence is Torres' statement. Torres' statement thoroughly recounts his interactions during the application process. Allstate has shown it has made reasonable efforts to locate Torres.[6] Moreover, the application, which demonstrates what Torres submitted to Allstate, cannot rebut Wezorek's and Barosh's claims that they informed Torres of necessary changes to the application, which Torres did not make. Thus, the necessary, more probative evidence is Torres' statement describing what representations were made to him.

### 4. Interests of justice and purpose of the Rules

Admitting Torres' statement would not run afoul of the purposes of the Federal Rules of Evidence. The purpose of the Federal Rules is defined in Rule 102, which provides: "These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the

---

[6] Allstate provided an affidavit from Joseph Nangle, a seasoned law enforcement officer turned private investigator, who attempted to locate Torres. Nangle began his search in February, 2007, and on June 19, 2007, learned Torres had returned to a remote part of Mexico.

truth may be ascertained and proceedings justly determined." Fed. R. Evid. 102.

Torres' statement is Allstate's most probative evidence of what information Wezorek and Barosh provided to Torres during the insurance application process. Prior to learning Torres was unavailable to testify at trial, Wezorek and Barosh were deposed in August, 2006. At that time, Wezorek and Barosh did not identify the additional communications, including a letter, that purported to inform Torres of the mistakes in the application. After learning Torres would not testify at trial, the additional communications surfaced. To allow Wezorek and Barosh the opportunity to present a new version (or supplemented version) of events at trial that they did not reveal until after learning of Torres' unavailability, without allowing Allstate the opportunity to present its version, would undermine the truth-seeking purpose of the Federal Rules.[7]

The Federal Rules essentially seek to ensure fundamental fairness in the administration of justice. Admitting Torres' statement accomplishes this goal. Without the statement, Wezorek and Barosh have the unfettered ability to present their one-sided version of events, subject to Allstate's cross-examination. This scenario, however, leaves Allstate without any substantive evidence of the interaction. Admitting the statement is fair because it allows each side to present its version of the transaction, which ultimately aids the fact-finder in determining the truth.

---

[7] Wezorek and Barosh claim Allstate's "unlimited" resources show Allstate could have done more to locate Torres, and that allowing his statement into evidence would be unfair. One purpose of the Federal Rules, however, is to prevent unjustifiable expense. Allstate undertook a reasonable investigation, and eventually learned Torres had returned to a remote part of Mexico. Moreover, Wezorek's and Barosh's counsel was involved since the inception of the transaction, and had ample opportunity to seek out Torres prior to his departure to Mexico.

5. Notice[8]

Wezorek and Barosh were given adequate notice to prepare to meet Torres' statement at trial. At the very latest, Wezorek and Barosh were given notice of Allstate's intention to use Torres' statement when the current motion was filed more than three weeks before trial. Allstate's motion followed a reasonable investigation into Torres' whereabouts, which was prompted by Wezorek and Barosh's post-deposition revelation of information they had communicated to Torres. Moreover, every party knew of Torres' last known address and unavailability 10 months ago. Under the circumstances, Wezorek and Barosh will suffer no prejudice because of the ample notice of Allstate's intention to use Torres' statement.

B. Danger of unfair prejudice

Rule 403 provides, in relevant part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . ." Fed. R. Evid. 403. The rule is an "umbrella" that applies to the whole of the Federal Rules of Evidence. See Coleman v. Home Depot, Inc., 306 F.3d 1333, 1343 (3d Cir. 2002) (citations omitted). The test for admission consists of carefully balancing the probative value of the relevant evidence against the danger of unfair prejudice. Forest v. Beloit Corp., 424 F.3d 344, 356 (3d Cir. 2005); Coleman, 306 F.3d at 1344. There is a strong presumption that relevant evidence is admissible. Forest, 424 F.3d at 355 (citation omitted). "[E]vidence that is highly probative is exceptionally difficult to exclude." Coleman, 424 F.3d at 1344 (citing United States v. Krenzolek, 874 F.2d

---

[8] Wezorek and Barosh claim Allstate cannot satisfy the notice provision because Allstate does not know Torres' current address. To accept this argument would eliminate the use of the residual hearsay exception in any instance where the declarant is unavailable and cannot be found after reasonable efforts. Allstate provided Wezorek and Barosh with Torres' last known address shortly after their depositions were taken in August, 2006. At that time, all parties became aware Torres was not available for trial.

480, 482 (7th Cir. 1989). The level of prejudice required, however, is not that which would harm a party's case, but the level which would create an unfair advantage, id. at 1344 n.6., i.e., "prejudice of the sort which cloud[s] impartial scrutiny and reasoned evaluation of the facts, which inhibit[s] neutral application of principles of law to the facts as found." Ansell v. Green Acres Contracting Co., Inc., 347 F.3d 515, 525 (3d Cir. 2003) (quoting Goodman v. Pa. Turnpike Comm'n, 293 F.3d 655, 670 (3d Cir. 2002)).

Torres' statement is highly probative. Its probative value is not substantially outweighed by a danger of unfair prejudice. Torres' statement is not inflammatory, it would not cloud the reasoned evaluation of the facts, nor would it inhibit the application of the law. Instead, Torres' statement will assist the fact-finder in fleshing-out the interactions between the parties, and will ultimately assist the pursuit of the truth.

To the extent the responses to leading questions in Torres' statement would unfairly prejudice Wezorek and Barosh, I will exclude pages 43-44 and 46.[9] Because these responses are less than spontaneous, thus calling question to their trustworthiness, I find their admission would be unfairly prejudicial under Rule 403.

An appropriate order follows.

---

[9] I find the remaining leading questions in the statement are on foundational issues, and track what is found on the insurance application. Thus, the responses are not unfairly prejudicial.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JILL WEZOREK, | : | CIVIL ACTION |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| ALLSTATE INSURANCE COMPANY, | : | NO. 06-CV-1031 |
| **Defendant** | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER BAROSH, | : | |
| **Counterclaim Defendant** | : | |

### ORDER

AND NOW, this 22nd day of June, 2007, upon consideration of the parties' filings and the oral argument held June 21, 2007, it is ORDERED that Defendant's motion in limine (Doc. No. 21) is GRANTED in part. With the exception of pages 43, 44, and 46, the recorded statement of Roman Torres shall be admitted into evidence at trial pursuant to Fed. R. Evid. 807.

BY THE COURT:

_____
TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE